## Penn Valley Resorts, Inc. v. Pa. Liquor Control Board

D. *Bruce Cahilly*, for plaintiff.
*Bruce Bikin*, for appellee.

FINK, *P.J.*, January 24, 1985—Counsel for the Pennsylvania Liquor Control Board asserts that the issues raised herein constitute a case of first impression within the Commonwealth. It appears that counsel for appellant, Penn Valley Resorts, Inc., agrees. The facts are, basically, as follows:

In the early morning hours of the fateful day of May 9, 1981, one William Edward Frazer passed this life when a mere 19 years of age. He was killed in a one-car automobile accident and, fortunately, he was the only occupant of the death car. He struck a bridge abutment on the opposite side of the road going at an extremely high rate of speed. Prior to the incident which appeared to cause immediate death, the victim had been drinking in the licensed premises owned by Penn Valley Resorts, Inc., some ten miles back down the road. Apparently, a complaint was made to the Liquor Control Board which resulted in an investigation which was conducted and a subsequent citation directed to the licensee alleging certain violations of provisions of the Liquor Code relating to the sale of beverages to minors and further, relating to continuing to serve a patron "visibly intoxicated". Hearing was held pursuant to

citation on December 18, 1981, which, in turn, resulted in a suspension of liquor license for a period of five days, viz., April 12, 1982, to April 17, 1982.

In June of 1983, the District Attorney of Potter County filed a criminal information against the licensee charging the licensee with furnishing liquor or malt beverages to certain minors, furnishing liquor or malt beverages to persons visibly intoxicated, reckless endangerment, and involuntary manslaughter. There subsequently was a jury trial by virtue of which defendant licensee, viz., Penn Valley Resorts, Inc., was convicted of all of the above mentioned charges and after post-trial motions were filed was sentenced to the imposition of the maximum fine of $10,000 as it related to the charge of involuntary manslaughter. This court found that the charge of reckless endangerment merged for purposes of sentencing with the greatest crime of manslaughter. Sentences were imposed in the amount of $100 each as to furnishing liquor to minors and furnishing a person visibly intoxicated.

Subsequent to the conviction, the Pennsylvania Liquor Control Board issued certain citations seeking a suspension or revocation. A hearing was held pursuant to said citations which resulted in an order of September 28, 1984, issued by the Pennsylvania Liquor Control Board which revoked appellant's Restaurant Liquor License and, further, ordered the forfeiture of the bond filed with the application for license. From this order the licensee has appealed.

The sole issue is whether or not the doctrine of collateral estoppel applies. It would appear that the doctrine of collateral estoppel is not a true estoppel but, nonetheless, one must ask the question whether or not such doctrine would apply against the Commonwealth and its agencies. The general rule as it relates to the doctrine of estoppel is that it does

apply to the Commonwealth and its agencies but only as it relates to the proprietary capacity of the Commonwealth, P.L.E. Estoppel, section 27. This issue was not addressed by either counsel but is one that the court feels should be addressed. Whether the particular function here involved is a governmental one or a proprietary one is questionable. It is governmental in that it seeks to compel compliance with rules and regulations designed to protect the public; it is proprietary in that there is a monetary fee to be paid for a license. Furthermore, it has been deemed that a license is a "property right". It would appear to this court, however, that the distinction of whether or not "estoppel" operates against the Commonwealth and its agencies should not include the doctrine of collateral estoppel which is, at least, a "first cousin" to the doctrine of res judicata. Therefore, it would appear that the question should be, does the doctrine of res judicata apply to the Commonwealth and its agencies as opposed to whether the doctrine of estoppel does or does not apply.

It almost goes without saying that the doctrine of res judicata does, indeed, apply to the Commonwealth and its agencies for the same reason that it applies to any other litigant, viz., there must be a finality of litigation and the consequences thereof. The distinction between the doctrine of res judicata and that of collateral estoppel is that the former deals with a previous judgment or decree of a court of competent jurisdiction which is brought about by litigation between the same parties, or their privies, on the same cause of action in the same or another court, as long as it remains unreversed, un-vacated, or annulled, Commonwealth v. Speer, 267 Pa. 129, 110 Atl. 268 (1920), whereas the doctrine of collateral estoppel precludes re-litigation of issues actually litigated and determined in prior suits regardless

whether it was based on the same cause of action and/or the same parties were involved. The theory of collateral estoppel is that a party is estopped to re-litigate a matter if equity and justice would prohibit such re-litigation.

In the instant case we are concerned with the initial citation against Penn Valley based upon serving liquor or malt or brewed beverages to minors and serving the same to persons visibly intoxicated. The citation which resulted in the revocation from which this appeal is taken was based upon a criminal conviction which, in turn, was based upon the service of liquor and malt or brewed beverages to a minor, viz., William Edward Frazer, age 19, and also serving the same minor when he was visibly intoxicated. It would appear that both appellant and appellee agree that the criminal conviction of the appellant of the offenses of involuntary manslaughter and reckless endangerment was based upon the serving by the licensee, or its agent, of alcoholic beverages to a minor and when he was visibly intoxicated.

There is identity as to parties between the first and second proceeding and both proceedings were before the same tribunal, viz., the Pennsylvania Liquor Control Board as the complaining agency and the Penn Valley Resorts, Inc. as the licensee complained of. It would appear that the only issue that differed was based upon the fact that in the first hearing the basis of the suspension was the serving of alcohol to a minor and when that minor was visibly intoxicated; the basis of the second hearing before the same tribunal and involving the same parties was the commission of the crimes herein mentioned which, in turn, was based upon the service of alcohol to a minor and while he was visibly intoxicated.

The appellee agrees that the initial suspension and the subsequent revocation were based upon the same factual episode.

Appellant refers to 47 P.S. 4-471 which particularly points out the necessity to issue a citation *within one year from the date of violation.* This portion of the code raises an additional question of whether or not the serving of the minor was one violation and the *conviction* of the crime was a second distinct violation. Defendant could argue that the crime was committed at the time the minor was served even though the conviction occurred a year and a half later and that the legislature intended to authorize the revocation or suspension of a liquor license on the *commission* of a crime and not upon the conviction. (Emphasis added.)

We do not agree with this position for, if it were otherwise, it would necessitate a trial and a conviction within one year of the date of the commission of the crime in order to suspend or revoke on the grounds of a crime being committed which often for a good cause does not occur due to waivers and extensions requested by defendant. We, therefore, are convinced that the serving of alcohol to a minor and while that minor was visibly intoxicated is, indeed, a different basis for violation as far as the "one year" requirement is concerned as mandated by section 4-471. We do, however, believe that the doctrine of collateral estoppel applies and the position asserted by the appellee simply does not "measure up" to the minimum requirements of fairness and justice which serve as an inalterable system of legal jurisprudence.

The board seeks to punish the licensee for a particular act through the first hearing and then after that same act gives rise to a criminal conviction,

again seeks to impart a second punishment because a jury said that that initial act was a crime.

Appellee further argues that the issuance of a license is the granting of a privilege and, in essence, the agency ought to be able to suspend or revoke at any time so long as there is a legitimate basis therefor. This is another way of merely saying that the doctrine of estoppel does not apply or should not apply to the given factual situation.

It does seem unjust that where there is a loss of a life involved, a mere five-day suspension results. There are two answers to this. The first is that the criminal prosecution is the procedure intended to mete out justice to the perpetrator. Furthermore, there is civil action available based upon the culpability of the licensee. Secondly, we cannot concern ourselves with appropriateness of action of the board which had the opportunity to go into all the facts and to draw a causal connection between the death of the minor and the serving of alcohol. This court happens to think it is almost "criminal" for the board to have only suspended for five days, but this court does not have the power to look into the propriety or wisdom of the amount of penalty imposed in the first hearing. The legal principle appears to this judge to be clear and to, unfortunately, prohibit the revocation from which the appeal was taken.

To explain the position of this court in a little different way, we should look to what authority the board had at the initial hearing and what changes, if any, there were in the second hearing. At the first hearing before the Pennsylvania Liquor Control Board and before there was a jury determination that Penn Valley had committed any crime, the board not only had the *opportunity* but had the *duty* to look into all of the relevant facts concerning the serving of alcohol to a minor and whether or not

that minor was visibly intoxicated at the time he was served by an agent of Penn Valley and what, if any, connection there was between such board violations and the death of the 19 year old victim. There is no doubt that the board had the authority and, furthermore, they not only had the right but the duty to make that conclusion based upon the facts presented at the hearing. The board did, in fact, find that the appellant, through its agent, served the victim alcohol, that he was, in fact, under age, and further, that he was visibly intoxicated at the time he was served the alcohol. Whether or not they, in fact, found a connection between the serving of alcohol and the victim's death is of no moment in that they had the power and the duty to so find and effectuate an appropriate punitive response. If the board failed in its duty to inquire into the connection between the serving of alcohol and the death of the victim, or if they did inquire but found that there was no connection, we cannot now repair that failure for it is not within this court's province. The punishment which they saw fit to mete out, woefully meager and inadequate as it was, does legally terminate the board's power to impose further sanctions upon the same factual circumstances. The fact that the jury made a determination based on the *same factual circumstances* is beside the point and carries with it its own punition. It would appear that had the board in the first instance revoked the license of Penn Valley Resorts, Inc. forevermore, this would have been most appropriate, but the board did not do so. What the board did or did not do as a result of the first hearing is not before this court. (Emphasis added.)

It is interesting to note in further support of the ultimate finding of this court that the revocation by the board from which appeal in the instant case was

taken was predicated upon a jury determination which is currently on appeal to the Superior Court of Pennsylvania. This, in turn, would seem to raise the specter of either remand for new trial or outright reversal. Does the possibility of appeal and reversal or remand mean that the citation based upon conviction was premature, accepting the position of the appellee as correct? We can only conclude that the above thought is supportive of the ultimate determination of this court as above made.

Thus, the following

### ORDER OF COURT

And now, this January 24, 1985, the order of revocation of the Pennsylvania Liquor Control Board of September 28, 1984, relating to Penn Valley Resorts, Inc., is hereby reversed and set aside.

The court also rendered an opinion from the bench at the time of argument that the order of the board pursuant to its citation no. 2601, 1983 alleging falsification of records and which suspended appellant's license for three days as of October 29, 1984, and "thereafter until the conditions are corrected", shall be and is hereby set aside and the appeal is sustained.